Aaron Tolson appearing for Appellant Stephen Mickel appearing for Appellee All right, would the Appellant like to reserve any time? No, Your Honors. All right, then Mr. Tolson you may begin. It's a real pleasure to appear in front of you. I've seen some of your opinions and I know you guys have a long history of helping out in the bankruptcy court, so we're hoping you can help us here. This case kind of reminds me of when I was back at the NCPJ in Miami and I met the poor Chapter 7 trustee from the famous Blah v. Siegel case that went to the Supreme Court. And he kind of told me what had happened to him, absolutely getting dragged into the mud by this debtor and all the effort he had to put into getting that mortgage figured out. Then the Supreme Court comes back and says, well, sorry, trustee, you guys went outside the bankruptcy court's jurisdiction and so we're going to basically leave you hanging out to dry. And a lot of people are really frustrated with that case. How that applies to this is I think the Supreme Court has been kind of sending a lot of slaps to the bankruptcy bar to say, you know what, we don't want to be doing equity too far where we're outside of what we should be doing. So in this case, I'll grant you, this is a terrible case. My client, you know, bought his mom out, took $80,000 from her as a gift to buy the home, had a promise to let her live there, the parties couldn't get along. And sure enough, she got thrown out in the snow. Anybody's going to feel terrible about that. And so I think in cases where terrible facts bring the sympathy of the judge to the front as it did in this case, I mean, I'm sitting there going, I hope they find a way to help this woman too. The problem is that I don't like the way this opinion creates a situation in the future where gift letters, people gifting money for children or whoever to buy a home get told, well, this could be like a situation where it comes back. I don't think the bank's like that. I don't think the court system right was set up that way. And so I know the court's always very prepared, read our brief, we've kind of outlined Idaho law, we believe on the subject of gift letters, that these are supposed to be honored and given effect in the bankruptcy court. So I think what happened here was just the judge who felt bad for the mom tried to find a way to help her. And I think it just fell outside what the court should be doing under equity. So that's reversed. I'm not saying my client doesn't have hopes to help his mom and do some good in the future. But it's just kind of like the gift letter. It was, you know, a signed gift letter that's gone out to the to the court system here. And she's going to have to be held to that legal effect of that gift letter. So so counsel, let's let's address that for a second. You raise two arguments. One argument you raise is that parole evidence was improperly admitted. Right. And the second argument is that the gift letter is absolutely the only thing the court should look at in terms of donative intent. Right. Right. So the parole evidence rule doesn't apply unless you have an integrated contract. Right. Right. The gift letter is not an integrated contract. Right. So so so parole evidence rule doesn't apply unless you have an agreement and your client's testified there was no contract. The court found there was no contract. So there was never a meeting of the minds or anything that would preclude the testimony about the purpose for what the money was given. Right. Right. And that's why we in the court allowed that testimony. We didn't really object it because I'm like you, I want the sun to shine in bankruptcy court. But my concern is just that the alternative there is even though parole evidence probably isn't the issue, the major issue is when you have a gift given like this, the effect of that is the mortgage companies rely on that, the banks rely on that, the person getting the home relies on that. That's why they require that because they just don't want this to come back. They don't want to have a situation where, hey, we we made this deal with the bank that this money was not going to be something that could be reclaimed because then we have the situation right here. I think isn't it actually a gotcha going the other way then? I mean, he tells his mother, sign the letter. Don't worry about it. We won't screw you. And then relies upon the letter in a way to prevent her from making any kind of a claim against them that she's entitled to any any money back or that it wasn't a gift. So you kind of have it both ways, don't you? Well, and I think that I'm like you. It's like, yeah, I'm trying to find any way to help this mom. Right. But the problem is when you sign that document, giving that money over, there's a reason the bank required that. There's a reason why that credit union said we need this letter. The bank isn't complaining. No, the bank's not here. But I just think as a policy decision, that's what we've decided in Idaho, that we're going to give donative intent to those letters and that they're going to be held to to the consequences of that letter just so we don't have some type of uncertainty out there. But that's not the test for for constructive trust. I mean, the test of constructive trust is unjust enrichment. Are you denying that there was unjust enrichment? No, we obviously feel like this gentleman got $80,000 for his home and he lives in it. And yeah, that's a that's a real problem for everybody. The other problem is, is that the question of donative intent is a totality of circumstances test, which means that the letter is certainly evidence of what her intent was, but it's not conclusive. And you know that that's the law in Idaho. So for you to take a position to me, that is, you know, absolutely, she's bound by it and there's no other questions to be asked is contrary to what the principles of contract interpretation and how Idaho courts operate under these circumstances, isn't it? Well, I think we've we've briefed you on what we feel the laws and obviously those cases are was we had a settlement conference. I know settlement conference aren't admissible. But the settlement conference that was handled, the debtor, my client was told, you'll win on this issue under Idaho law. And so he went into that thinking, well, you know, that's an Idaho law issue I'm going to win on. And so we he wanted this appeal because he had always felt like that this was the law and he'd been counseled by that by other attorneys in the past. I'm with you. I don't think I like the result of what happened to this mother and I think that the judge properly took a sympathetic look at it. But it's my client's position that that donated letter should have been the only thing that that we really were looking at. And that the current state of bankruptcy law with the Supreme Court is that bankruptcy courts must be really careful not to stray too far into equity where they get into going beyond what they're allowed to do. But that that's if there's a that's if there is not an independent basis for it. And this is a matter of state law. Yes. Judge Meyer was applying the state law on on doing equity for constructive trust. There's no no prohibition or restriction on that. And in fact, law versus Siegel recognized that there could be state law restrictions on use of the funds. You just couldn't use Section 105. And I don't think the court was using Section 105 here. No, no. I think the court started that hearing by by saying I'm really interested in the constructive trust there you have, Mr. Mikkel. So I knew we were in trouble right away because it's already kind of get there. But as far as my client's concern is, he just felt like that, that she did give that gift that she was told at the time that that when she was signing that that it was a, you know, it was a total release of those funds that she wouldn't have any further claim on it. And so because of that reliance, my client felt like he shouldn't be held to a But that is his position. And I think our briefing is about a thorough position we could take as for a client. And I don't need to spend a lot of your time on this. I know you guys are able to handle this. But that is our position. So we'd ask you to consider that. And I don't think I need to waste any more of your time unless you have other questions. All right. Thank you. Appreciate it. Thank you. All right. For the FLE. Mr. Mikkel. Thank you, your honors. Appreciate you taking time with this today to help sort this out. First thing I'd like to point out is the amount of money involved was $92,000. There was additional monies that my client paid to pay off debt to also qualify for the loan. The loan could not have been obtained without this down payment that was bargained for by her son, James, the appellant. There was a mountain of evidence, both from FLE's testimony. Appellant admitted what the agreement was. Two of his uncles, brothers to the appellee, heard them talk about their agreement as well as Mrs. Rose, our son, heard it as well. So it was well known what the agreement was. The gift letter came up in financing just as a requirement of the paperwork that would be required in the file. And the court found that there was no donative intent. She didn't mean it as a gift. She was reluctant to sign it and only did so by promises by her son saying that she was still going to have a place to live with Everett forever. Her name would be on the deed. So you think they quite properly analyzed the totality of the facts and came to its decision? Yes, absolutely. And it was supported by the record? Abundant record. In fact, the arguments that are made by the appellant aren't really supported by the facts. They're just a hope that this gift letter gives them the way out of their responsibility. And I believe that Judge Myers, I mean, he went to great lengths. He was methodical and articulate in how he stepped through the Idaho law, both in terms of the statute and in terms of the case law. And not just because he found in my client's favor, but because it is the law and these are the facts and there's really not much that can be argued about them. And I'm sad that my client had to come and spend money on an appeal where there was really not a legal nor factual basis for it. And I would just like to ask, leave the time open so I could use it best to answer the questions that any of your honors have for me as to questions you have about our position in the case. I have no questions. Judge Gann? No, I thought that the brief was good. I understood the arguments. I understood the decision. I think I understand that as Judge Brand pointed out, it was a totality of circumstances based upon the evidence presented and the legal theories presented. And I don't have any other questions. Judge Spraker, anything further from you? No, thank you. All right then, Mr. Maricol, if you have nothing else to say, we can take the matter under submission if that's what you'd like. Yes, your honor. Appreciate that. Thank you for your time and what you're doing. I know it takes a lot of time. Our Judge Papp has spent a lot of time on the BAP and we're familiar with all the Thank you very much for your good arguments, both of you. All right, so that matter is submitted.
judges: BRAND, SPRAKER, GAN